UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ABEL LEON VEGA,

       Plaintiff,

v.                             Case No. 8:23-cv-993-CEH-NHA

FRIENDS OF DOLPHINS, LLC
and SHELDON PLAZA, LLC,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

I recommend the Court grant in part and deny in part Plaintiff Abel Leon Vega's motion for default judgment against Defendants Friends of Dolphins, LLC and Sheldon Plaza, LLC. Specifically, I recommend the Court grant Plaintiff's motion for default judgment on Plaintiff's Fair Labor Standards Act ("FLSA") claim (Count Two), deny the motion for default judgment on the retaliation claim (Count One), and award Plaintiff $4,877.71 in unpaid overtime premiums, $4,877.71 in liquidated damages, $6,520.00 in attorneys' fees, and $488.00 in costs, plus post-judgment interest.

### I.    Background

Defendants jointly operate three car washes, including at least one in Tampa, Florida. Am. Compl. (Doc. 21) ¶¶ 4–5; 16. As part of Defendants' car

washing business, they use machines and other equipment that have moved through interstate commerce, they use interstate banking systems, and they use telephones for interstate communications. Am. Compl. (Doc. 21) ¶ 14. Defendants' annual gross sales from their three locations exceeded $500,000. *Id.* ¶ 16.

Defendants employed Plaintiff as a maintenance technician at two of Defendants' locations, from September 2017 through December 2022. *Id.* ¶¶ 4, 18. Plaintiff's duties included washing and detailing cars and performing maintenance on the car washing machines, including machinery that had moved in interstate commerce, depositing Defendants' money from the car washing machines into a bank, and texting with Defendants about those deposits. *Id.* ¶¶ 28–32. Plaintiff alleges he regularly worked more than forty hours per week across two of Defendants' locations, but that he was compensated for excess hours at his regular hourly rate. *Id.* ¶ 27.

In July 2022, Plaintiff injured his toes, feet, hip, and leg at work, and notified Defendants of his injury. *Id.* ¶¶ 19–20. Plaintiff requested to file a worker's compensation claim in November 2022, but Defendant refused to allow him to do so. *Id.* ¶¶ 22–23. On December 16, 2022, in what Plaintiff claims was an act of retaliation for his request to file a worker's compensation claim, Defendants terminated Plaintiff. *Id.* ¶ 26.

## II.    Procedural History

On May 5, 2023, Plaintiff brought this lawsuit, alleging that Defendants retaliated against him in violation of the Florida Workers' Compensation Act ("FWCA"), Fla Stat. § 440.205 (Count One); and committed willful violations of the FLSA, 29 U.S.C. § 255(a) (Count Two). Compl. (Doc. 1)

Plaintiff served Defendants on May 10, 2023 (Docs. 9, 10), but neither Defendant answered nor entered an appearance to defend this lawsuit. Accordingly, Plaintiff moved for entry of Clerk's default against the Defendants (Doc. 11), which the Court granted (Docs. 12, 13).

On July 6, 2023, Plaintiff moved for final default judgment against Defendants. Docs. 14, 15. The Court denied that motion without prejudice, finding (1) that Plaintiff had failed to plead factual allegations upon which the Court could find that Defendants were employers within the meaning of the FLSA, and (2) that Plaintiff's attorney had provided insufficient information to support his fee request. Doc. 17.

Plaintiff then filed an Amended Complaint that added factual allegations meant to demonstrate the FLSA's coverage of Defendants. Doc. 21. Plaintiff served the Amended Complaint on Defendants on April 3, 2024. Doc. 22. After Defendants failed to timely answer or otherwise respond to the

3

Amended Complaint, the Clerk again entered default against Defendants. Docs. 25, 26.

Then, Plaintiff reattempted his motion for final default judgment against both Defendants. Doc. 27. In that motion, the one at issue here, Plaintiff asks the Court to award him $19,241.12 in damages–which includes $9,360 in backpay for the retaliation, $4,940.56 in unpaid overtime premiums, and $4,940.56 in liquidated damages–and $12,123 in fees and costs. Doc. 27.

Upon initial review of the motion, the Court issued a Show Cause Order, directing Plaintiff to clarify certain aspects of his FLSA overtime claim and to provide support for his damages request. Doc. 28. Plaintiff responded to the Show Cause Order on July 29, 2024, by changing his prayer for relief. Doc. 29. First, he revised his request for overtime violation damages to seek only those damages accrued in the two years preceding the lawsuit, which damages amounted to $9,785.60 (a lower amount than he asked for in his motion). *Id.* at p. 2. Second, he advised that he no longer sought backpay in relation to Count One. *Id.*

At no point have Defendants appeared in or otherwise demonstrated an intent to defend this case.

4

## III.   Standard of Review

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing FED. R. CIV. P. 55(b)(2)). A Clerk's default under Rule 55(a) deems a defendant to admit a plaintiff's well-pleaded allegations of fact. *Id.* at 1245 (citing *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). However, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton*, 402 F.3d at 1278 (citation and quotations omitted).

So, notwithstanding entry of a Clerk's default, the Court may enter a default judgment under Rule 55(b) only where the pleadings sufficiently support a judgment. *Surtain*, 789 F.3d at 1245 (citation omitted). In deciding a motion for default judgment, the Court should assess the pleadings by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* (citation omitted). In other words, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

If a plaintiff is entitled to default judgment, then the court must also consider whether the plaintiff is entitled to the relief it requests. The damages a plaintiff requests are not deemed proven simply by default; rather, the Court must determine the amount and type of damages to award. *Anheuser Busch, Inc. v. Philpot,* 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters."); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985).

If, to enter or effectuate judgment, it is necessary to conduct an accounting to determine damages, the court may conduct hearings or make referrals as it deems necessary. Fed. R. Civ. P. 55(b)(2). But damages may be awarded "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (quoting *Adolph*, 777 F.2d at 1544); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is unnecessary if sufficient evidence supports the request for damages).

## IV.   Analysis

### a.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction over Count Two pursuant to 28 U.S.C. § 1331, because Count Two arises under the FLSA, a federal law codified at 29 U.S.C. § 201 et seq. Doc. 21, ¶¶ 1-2. The Court has supplemental jurisdiction over Count One under 28 U.S.C. § 1367, because Plaintiff's claim for violations of the Florida Workers' Compensation Act ("FWCA") is related to, and is part of the same controversy as, the FLSA claim over which the Court that has original jurisdiction. 28 U.S.C. § 1367(a).

### b.  Proper Service of the Complaint

Next, Plaintiff has properly served the Defendants. In seeking a default judgment, Plaintiff bears the burden of establishing proper service of the complaint. "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). And, "[g]enerally, where service of process is insufficient, the court has no power to render judgment." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003).

Federal Rule of Civil Procedure 4(h)(1) governs the service of process of complaints on United States corporations and applies to limited liability

7

companies (LLCs). *See Fitzpatrick v. Bank of New York Mellon*, 580 F. App'x 690, 693 (11th Cir. 2014) (applying 4(h) to an LLC). It provides that service may be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1)(B).

Service of an amended pleading, however, is governed by Federal Rule of Civil Procedure 5, which states that service is complete when a party mails the amended complaint to the defendant's last known address. FED. R. CIV. P. 5(a)(1)(B), (b)(2)(C).

Here, the return of service demonstrates that Plaintiff served the original Complaint on Friends of Dolphins on May 10, 2023, by serving a copy of the summons and complaint on Catherine Weis. Doc. 9. Records of the Florida Department of State, Division of Corporations ("Sunbiz"), confirm Ms. Weis is the registered agent of Friends of Dolphins.[1] And, Plaintiff served the Amended Complaint by mailing it to the address listed on Sunbiz for Friends

---

[1] Records of the Florida Department of State, Division of Corporations, are available at www.sunbiz.org, a verified website of a public agency. Federal Rule of Evidence 201 permits courts to take judicial notice of "a fact that is not subject to reasonable dispute because it[ ] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

of Dolphins on April 3, 2024. Doc. 22. Thus, Plaintiff served Friends of Dolphins in accordance with Rules 4 and 5.

As to Sheldon Plaza, the return of service demonstrates that Plaintiff served the original Complaint on Sheldon Plaza on May 10, 2023, by serving a copy of the summons and complaint on Catherine Weis. Doc. 10. Sunbiz records confirm Ms. Weis is the registered agent of Sheldon Plaza. And, Plaintiff served the Amended Complaint on April 3, 2024, by mailing it to the address listed on Sunbiz for Sheldon Plaza. Thus, Plaintiff served Sheldon Plaza in accordance with Rules 4 and 5.

 c. <u>Personal Jurisdiction</u>

In addition to ensuring proper service, a court must also ensure it has personal jurisdiction over any defaulting defendants. Rule 4(k)(1)(A) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant[] who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

Plaintiff served both Defendants in Florida on May 10, 2023 (Docs. 9, 10) and April 3, 2024 (Doc. 22), satisfying the first requirement of Rule 4(k)(1)(A). As to the second requirement of Rule 4(k)(1)(A), both Defendants are incorporated in Florida and operate car washes in Tampa, Florida. Am. Compl. (Doc. 21) ¶ 5. This is sufficient to establish personal jurisdiction over

Defendants. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)) (observing that "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home"); *see also Frank v. P N K (Lake Charles) L.L.C.,* 947 F.3d 331, 338 n.10 (5th Cir. 2020) (noting that the reasoning in *Daimler* applies to LLC's because, "The rationale behind this test is to rely on a business's domicile or place of principal business as a guidepost in ascertaining where the business is "at home." Considering this premise, the entity type is not germane to this jurisdictional analysis[.]").

Therefore, the Court has personal jurisdiction over both Defendants.

d. <u>Liability</u>

Plaintiff brings claims against both Defendants for retaliation in response to an attempt to exercise his worker's compensation rights (Count One), and for FLSA overtime violations (Count Two). I begin with Count Two, as it is the claim in the Amended Complaint that invokes this Court's jurisdiction. *See Peacock v. Thomas*, 516 U.S. 349, 355 (1996) ("The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims.").

10

i.    Count Two

In Count Two, Plaintiff alleges that he was not paid the higher rate to which he was entitled when he worked overtime hours for Defendants. The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Accordingly, the FLSA requires employers to pay higher overtime rates to employees who work more than 40 hours in a work week. 29 U.S.C. § 207(a)(1). To state a claim under the FLSA for unpaid overtime wages, a plaintiff must allege sufficient facts to establish that (1) the defendant employed him; (2) the defendant is an enterprise engaged in interstate commerce covered by the FLSA (enterprise coverage) or plaintiff is otherwise covered under the FLSA (individual coverage) and (3) the defendant failed to compensate plaintiff at an appropriate rate for the hours worked. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n. 68 (11th Cir. 2008).

As to the first pleading requirement, employment, the FLSA defines an "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). Accordingly, an employee may have more than one employer (known as joint

11

employment) in certain situations, including when employers to share the employee's services. *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012) (quoting 29 C.F.R. § 791.2[2]). Here, Plaintiff pleads that Defendants jointly operated three car wash locations, that Plaintiff worked for both Defendants as a maintenance technician in September 2017 at two of those locations, and that both Defendants fired Plaintiff. Am. Compl. (Doc. 21), ¶¶ 4, 18, 26. These facts are sufficient to show that Defendants jointly employed Plaintiff.

Second, an employee must demonstrate that either he or his employer was covered by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662

---

[2] Section § 791.2 has since been rescinded. *See* Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule, 86 FR 40939-01. But, the Department of Labor (DOL) reiterated in its 2021 recission that the recission does not change the DOL's joint employer analysis as it "has been the Department's position for decades" that joint employment exists in the following three situations, among others: "(1) [t]here is an arrangement between the employers to share the employee's services; (2) one employer is acting directly or indirectly in the interest of the other employer in relation to the employee; or (3) the employers share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 86 F.R. 40939-01, 2021 WL 3207510, at *40954. Although I recognize it is ultimately a court's duty to interpret the FLSA, *see Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), I find the DOL's articulated factors for joint employment properly reflect the U.S. Supreme Court instruction that FLSA employer-employee relationships should be grounded in "'economic reality' rather than 'technical concepts[].'" *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (citation omitted).

F.3d 1292, 1298 (11th Cir. 2011). An employee may establish coverage by demonstrating either (1) that he was engaged in interstate commerce or in the production of goods for interstate commerce, or that he regularly used the instrumentalities of interstate commerce (i.e., individual coverage); or (2) that the employer "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for [interstate] commerce by any person" and has gross volume sales or business of at least $500,000 annually (i.e., enterprise coverage). 29 U.S.C. §§ 203(s)(1), 207(a)(1); *Josendis*, 662 F.3d at 1298–99; *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

In his original Complaint, Plaintiff alleged that he was "engaged in the production of goods for commerce" and that "Defendants were engaged in interstate commerce" and had an annual gross sales volume in excess of $500,000. Compl. (Doc. 1) at ¶¶ 11, 15–16. The Court found these conclusory assertions insufficient. Doc. 17. In his Amended Complaint (Doc. 21), Plaintiff added facts to meet the requirements for both individual coverage and enterprise coverage.

Starting with the individual coverage, Plaintiff alleged that he personally handled machines and cleaners that had moved in interstate

commerce; that he "collected the money from Defendants' auto-pay machines," and deposited it in a bank and communicated about the deposit with Defendants via text message; and that he "regularly and recurrently used interstate telephones." Am. Compl. (Doc. 21), ¶¶ 11, 29–32. First, Plaintiff's allegation that he handled materials that had been moved in interstate commerce does not establish that he participated in interstate commerce. *See Josendis*, 662 F.3d at 1316 (Unlike enterprise coverage, which does consider whether the employees handle materials that have been moved in interstate commerce, individual coverage is not affected by the handling of such materials.). And, although Plaintiff suggests that his handling of money and making deposits with banks establishes individual coverage, this conclusion is unsupported by case law. *See Thorne*, 448 F.3d 1264 (affirming dismissal of claim under FLSA since there was no basis for individual coverage where employee simply used company credit cards to make payments); *Crossley v. Armstrong Homes, Inc.*, No. 5:14-CV-636-OC-30PRL, 2015 WL 2238347, at *3 (M.D. Fla. May 12, 2015) (finding no individual coverage when the plaintiff's duties included collecting money and making deposits); *Westley v. Love Pet Grooming Salon, Inc.*, No. 8:18-CV-172-T-24-TGW, 2019 WL 249716, at *5 (M.D. Fla. Jan. 17, 2019) ("[M]aking bank deposits is not sufficient to support individual coverage."). Finally, although the Eleventh Circuit has held that a

14

plaintiff may be "engaged in commerce" for purposes of individual coverage under the FLSA if he regularly uses the telephone to communicate with out-of-state customers and vendors*, St. Elien v. All Cnty. Env't Servs.*, Inc., 991 F.3d 1197, 1199 (11th Cir. 2021), the Complaint does not include facts showing that Plaintiff used telephones to communicate with anyone out of state. Rather, it states that he used a phone to communicate with the Florida-based Defendants (Am. Compl. (Doc. 21), ¶¶ 29–32). Accordingly, I do not find that Plaintiff has sufficiently pleaded facts demonstrating individual coverage under the FLSA.

Turning to enterprise coverage, Plaintiff pleads that Defendants "utilized machines, equipment, tools, supplies, and cleaners which had moved through interstate commerce . . . ." Am. Compl. (Doc. 21), ¶ 14. This is sufficient to show Defendants engaged in interstate commerce. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1229 (11th Cir. 2010) (confirming enterprise coverage applies when an employer utilizes materials that have previously moved in interstate commerce).

As to the monetary threshold for FLSA enterprise coverage, Plaintiff alleges that Defendants' sales volume exceeded $500,000 a year, because Defendants operated two car washes that collectively did $364,000 in business and another car wash that did more than $182,000 in business. Am. Compl.

15

(Doc. 21), ¶ 16. Thus, although Plaintiff does not explicitly say so, Plaintiff is asking the Court to aggregate the sales volume of the two individual Defendants. To proceed under a "joint enterprise" theory, a plaintiff must show that the Defendants (1) engaged in related activities; (2) had a common business purpose; and (3) functioned under a unified operation or common control. *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984); 29 C.F.R. § 779.202.

<u>Related Activities.</u> First, "[a]ctivities are related when they are the same or similar or when they are auxiliary and service activities." *Donovan*, 723 F.2d at 1551 (internal quotations omitted). The complaint alleges that Defendants' businesses were all car washes. Am. Compl. (Doc. 21) at ¶16. I accept that the businesses conducted similar activities.

<u>Common Business Purpose.</u> Business purposes are common when the activities of two or more businesses are "directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213. However, "[m]ore than a common goal to make a profit" is required to establish a common business purpose. *Donovan*, 723 F.2d at 1553. From Plaintiff's allegations, one can infer that Defendants' car washes had the common purpose of washing vehicles for paying customers and thus shared a common business purpose.

16

Unified Operation or Common Control. When evaluating whether two organizations constitute a unified operation or are controlled by a common authority, the "determinative question is whether a common entity has the power to control the related business operations." *Donovan*, 723 F.2d at 552 (citing *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1301 (5th Cir. 1969)). Here, the Complaint alleges that the two Defendants "jointly operate" car washes (Am. Compl. (Doc. 21) ¶ 5). Indeed, Defendants' filings with the Florida Department of State show that that Defendants are controlled by a common authority—manager Tazim Roshandli Jaffer.

Accordingly, I find Plaintiff has sufficiently established enterprise coverage, satisfying the second element of an FLSA claim for failure to pay overtime wages.

Finally, to support his FLSA claim, Plaintiff must plead facts showing that Defendants failed to compensate plaintiff at an appropriate rate for the hours worked. *See Morgan*, 551 F.3d at 1277 n. 68.  Plaintiff alleges that he worked more than 40 hours per week for Defendants but that Defendants failed to compensate him at a rate of time and one-half his regular pay for overtime work. Am. Compl. (Doc. 21), at ¶¶ 27, 34.

17

Plaintiff sufficiently alleges the liability of Defendants for overtime-wage violations under the FLSA. I recommend the Court enter judgment in favor of Plaintiff and against Defendants on Count Two.

ii.    Count One

In Count One, Plaintiff alleges that Defendants retaliated against him by terminating his employment, after he sought to file a worker's compensation claim.

Section 440.205 of the Florida Statutes provides that no "employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205. To state a prima facie case, a plaintiff must establish that (1) he engaged in protected activity, (2) that he was subject to an adverse employment action, and (3) that there was "a causal link between the protected activity and the adverse employment action." *Salus v. Island Hosp. Fla. Mgmt., Inc.*, 289 So. 3d 926, 929–30 (Fla. 4th DCA 2020) (quoting *Koren v. Sch. Bd. of Miami-Dade Cnty.*, 97 So. 3d 215, 219 (Fla. 2012)).

First, protected activity includes both filing and attempting to file a worker's compensation claim. Fl. Stat. § 440.205 (protecting an "employee's valid claim for compensation or attempt to claim compensation under the

Workers' Compensation Law"); *see also Smith v. Piezo Tech. & Prof'l Adm'rs*, 427 So. 2d 182, 184 (Fla. 1983) (Section 440.205 applies to "an employee's pursuit of a workers' compensation claim."); *Bifulco v. Patient Bus. & Fin. Servs., Inc.*, 39 So. 3d 1255, 1257 (Fla. 2010) ("Section 440.205 . . . creates a cause of action for employees who are subject to retaliatory treatment by their employers for attempting to claim workers' compensation."). Plaintiff pleads that, "[i]n November 2022, Plaintiff requested to file a Workers' Compensation claim." Am. Compl. (Doc. 21), ¶ 22; *see also* ¶ 25 ("Plaintiff attempted to file a Workers' Compensation claim."). Accordingly, he satisfies the first element of the prima facie case.

Second, a plaintiff must allege an adverse employment action, which means "a serious and material change in the terms, conditions, or privileges of employment." *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (citation, emphasis, and quotation marks omitted). Termination is an adverse action. Fla. Stat. § 440.205. Plaintiff pleads this element of the prima facie case with his allegation that he was terminated on December 16, 2022. Am. Compl. (Doc. 21), ¶ 26.

Finally, a plaintiff can establish a causal relationship between his protected activity and the adverse employment action by showing a "close

temporal proximity" between the two events.[3] *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Mere temporal proximity, without more, however, must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quotation omitted). "[A] period as much as one month between the protected expression and the adverse action is not too protracted." *Higdon*, 393 F.3d at 1220. But a delay of two months or more between the statutorily protected expression and the adverse employment action fails to independently support an inference of causation. *Thomas*, 506 F.3d at 1364; *Williams v. Waste Mgmt.*, Inc., 411 F. App'x 226, 230 (11th Cir. 2011).

Plaintiff alleges he engaged in protected activity in "November 2022" and that he was terminated on December 16, 2022. Am. Compl. (Doc. 21), ¶¶ 22, 26. Thus, while it is possible that less than a month passed between the protected activity and the adverse employment action (had Plaintiff requested to file a worker's compensation claim on or after November 17, 2022), it is also possible that more than a month had passed (had Plaintiff requested to file a worker's compensation claim before November 17, 2022). Because Plaintiff's singular allegation as to causation (temporal proximity) is not pleaded clearly

---

[3] A plaintiff can show causation in other ways. However, Plaintiff pleads no facts to establish causation beyond stating the timing of the protected activity and adverse employment action. *See* Am Compl. (Doc. 21) at ¶¶ 22–26, 36–39.

enough for the Court to determine whether it independently supports an inference of causation, I find that Plaintiff has failed to plead facts showing a causal relationship between the protected activity and the adverse employment action.

I therefore recommend the Court deny without prejudice the motion for default judgment as to Count One.

> e. <u>Damages</u>

Because Plaintiff's well-pleaded facts support its claims against the Defendants on Count Two, the Court next turns to damages. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Plaintiff seeks (1) damages for overtime violations for the two years prior to the complaint, which he alleges amount to $4,892.80, (2) an equal amount ($4,892.80) in liquidated damages, (3) $11,635.00 in attorneys' fees, (4) $488.00 in costs, and (5) post-judgment interest. Docs. 27, 29.

> i. Unpaid Premiums

The FLSA provides that an employer who violates the FLSA is liable for the unpaid premiums owed to the employee. 29 U.S.C. § 216(b). However, pursuant to the FLSA's statute of limitations, an employee can only recover unpaid wages owed in paychecks he received in the two years prior to

commencing his lawsuit.[4]  29 U.S.C. § 255(a); *see also Knight v. Columbus, Ga.*, 19 F.3d 579, 581–82 (11th Cir. 1994) (concluding that each paycheck the plaintiff received that did not include payment for time worked was a separate violation of the FLSA, which gave rise to a new statute of limitations period as to that event, and that only the wages owed from paychecks received during the relevant statute of limitations period could be recovered).

Plaintiff filed this action on May 5, 2023, and is entitled to any overtime wages owed on paychecks after May 5, 2021. Compl. (Doc. 1). Plaintiff provided pay information (Doc. 29-2) sufficient for the Court to conclude that Plaintiff's unpaid overtime premiums total $4,877.71:

| Paycheck Date | Hours at Sheldon Plaza | Hours at Friends of Dolphins | Total | Over-time Hours | Pay Rate | Overtime Pay Due |
|---|---|---|---|---|---|---|
| May 14, 2021 | 34.45 | 55.28 | 89.73 | 9.73 | $14.50 | $70.54 |
| May 28, 2021 | 58.87 | 37.66 | 96.53 | 16.53 | $14.50 | $119.84 |
| June 11, 2021 | 54.65 | 35.93 | 90.58 | 10.58 | $16.50 | $87.29 |
| June 25, 2021 | 56.01 | 44.39 | 100.40 | 20.40 | $16.50 | $168.30 |
| July 9, 2021 | 54.70 | 25.75 | 80.45 | 0.45 | $16.50 | $3.71 |
| July 23, 2021 | 33.11 | 45.01 | 78.12 | 0.00 | $16.50 | $0.00 |
| August 6, 2021 | 74.76 | 22.78 | 97.54 | 17.54 | $16.50 | $144.71 |
| August 20, 2021 | 49.46 | 21.39 | 70.85 | 0.00 | $16.50 | $0.00 |
| September 3, 2021 | 68.45 | 24.150 | 92.6 | 12.60 | $16.50 | $103.95 |
| September 17, 2021 | 78.68 | 22.13 | 100.81 | 20.81 | $16.50 | $171.68 |
| October 1, 2021 | 71.33 | 27.73 | 99.06 | 19.06 | $16.50 | $157.25 |

[4] This time extends to three years when the FLSA violation was "willful." 29 U.S.C. § 255(a). Plaintiff only seeks damages for two years' pay (Doc. 29) so I need not determine whether the violations were "willful" here.

| | | | | | |
|---|---|---|---|---|---|
| October 15, 2021 | 67.73 | 25.32 | 93.05 | 13.05 | $16.50 | $107.66 |
| October 29, 2021 | 53.56 | 54.57 | 108.13 | 28.13 | $16.50 | $232.07 |
| November 12, 2021 | 48.98 | 46.38 | 95.36 | 15.36 | $16.50 | $126.72 |
| November 26, 2021 | 50.36 | 40.34 | 90.70 | 10.70 | $16.50 | $88.28 |
| December 10, 2021 | 54.59 | 26.32 | 80.91 | 0.91 | $16.50 | $7.51 |
| December 24, 2021 | 66.41 | 28.20 | 94.61 | 14.61 | $16.50 | $120.53 |
| January 7, 2022 | 78.04 | 18.42 | 96.46 | 16.46 | $16.50 | $135.80 |
| January 21, 2022 | 80.00[5] | 17.93 | 97.93 | 17.93 | $18.00 | $161.37 |
| February 4, 2022 | 63.86 | 0.32 | 64.18 | 0.00 | $18.00 | $0.00 |
| February 18, 2022 | 80.00 | 0.00 | 80.00 | 0.00 | $18.00 | $0.00 |
| March 4, 2022 | 80.00 | 20.79 | 100.79 | 20.79 | $18.00 | $187.11 |
| March 18, 2022 | 80.00 | 24.49 | 104.49 | 24.49 | $18.00 | $220.41 |
| April 1, 2022 | 80.00 | 12.01 | 92.01 | 12.01 | $18.00 | $108.09 |
| April 15, 2022 | 80.00[6] | 0.00 | 80.00 | 0.00 | $18.00 | $0.00 |
| April 29, 2022 | 57.92 | 37.38 | 95.30 | 15.30 | $18.00 | $137.70 |
| May 13, 2022 | 69.90 | 43.86 | 113.76 | 33.76 | $18.00 | $303.84 |
| May 27, 2022 | 50.00 | 45.00 | 95.00 | 15.00 | $18.00 | $135.00 |
| June 10, 2022 | 76.37 | 17.10 | 93.47 | 13.47 | $18.00 | $121.23 |
| June 24, 2022 | 56.35 | 37.53 | 93.88 | 13.88 | $18.00 | $124.92 |
| July 8, 2022 | 74.24 | 36.38 | 110.62 | 30.62 | $18.00 | $275.58 |
| July 22, 2022 | 71.26 | 41.74 | 113.00 | 33.00 | $18.00 | $297.00 |
| August 5, 2022 | 63.96 | 35.5 | 99.46 | 19.46 | $18.32 | $178.27 |
| August 19, 2022 | 62.21 | 35.07 | 97.28 | 17.28 | $19.50 | $168.48 |
| September 2, 2022 | 20.00 | 20.00 | 40.00 | 0.00 | $19.50 | $0.00 |

[5] Plaintiff seeks compensation for an additional 2.06 hours worked at this location, but he was compensated at an overtime premium for those hours. Doc. 29-2 at p. 8.

[6] Plaintiff seeks compensation for an additional 4.05 hours worked at this location, but he was compensated at an overtime premium for those hours. Doc. 29-2 at p. 10.

| | | | | | | |
|---|---|---|---|---|---|---|
| September 16, 2022 | 59.07 | 34.13 | 93.20 | 13.2 | $19.50 | $128.70 |
| September 30, 2022 | 80.00 | 11.47 | 91.47 | 11.47 | $19.50 | $111.83 |
| October 14, 2022 | 75.05 | 17.64 | 92.69 | 12.69 | $19.50 | $123.73 |
| October 28, 2022 | 64.12 | 38.27 | 102.39 | 22.39 | $19.50 | $218.30 |
| November 11, 2022 | 30.39 | 18.17 | 48.56 | 0.00 | $19.50 | $0.00 |
| November 25, 2022 | 46.16 | 36.95 | 83.11 | 3.11 | $19.50 | $30.32 |

### ii.    Liquidated Damages

The FLSA provides that, in addition to liability for unpaid overtime, employers are liable for liquidated damages "in an additional equal amount," to the unpaid wages. 29 U.S.C. § 216(b); *see also Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 938–39 (11th Cir. 2000) (liquidated damages are compensatory in nature).[7] Thus, Plaintiff is also due $4,877.71 in liquidated damages.

### iii.    Attorney Fees

Beyond the above damages, the FLSA provides that a successful plaintiff is entitled to an award of a reasonable attorney fee and the "costs of the action."

---

[7] Liquidated damages must be awarded absent a showing by the employer that it acted in good faith and under the reasonable belief that it was in compliance with the FLSA. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) ("[L]liquidated damages are mandatory absent a showing of good faith.") (citation omitted). Here, Defendants have not appeared to make such a showing.

29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

Plaintiff seeks $11,635 for 17.9 hours expended by attorney Luis Cabassa at an hourly rate of $650. Docs. 27 at pp. 12–14, 27-2, 27-3. The first step in calculating whether this constitutes a reasonable fee is to determine the "lodestar," which is the product of the reasonable hours expended multiplied by a reasonable hourly rate. *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 686 (11th Cir. 2011) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Then, the Court considers whether adjustments to that fee are necessary given the circumstances of the case. *Blum v. Stenson*, 465 U.S. 886, 888 (1984)

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (citation omitted). And, in determining the reasonableness of the hours expended, courts exclude "excessive, redundant, or otherwise unnecessary" hours an attorney could not appropriately bill the client or opposing counsel in the exercise of good billing judgment. *Norman v.*

*Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quoting *Hensley*, 461 U.S. at 434 & 437).

Regarding Mr. Cabassa's requested $650 hourly rate, Mr. Cabassa asserts in his affidavit that he has been practicing law since 1995 and is board certified by the Florida Bar as an expert in labor and employment law. Doc. 27-2 at p. 1. He also attests that he charges $800 per hour for all new non-contingency clients. *Id.* at p. 2. Mr. Cabassa seeks an hourly rate of $650.

An initial survey of the rates awarded for single-Plaintiff FLSA cases in this district suggest his requested rate exceeds that typically awarded.[8] *See, e.g., Rizzo-Alderson v. Tawfik*, 5:17-cv-312-Oc-37PRL, 2019 WL 3324298, at *3 (M.D. Fla. July 1, 2019) (noting in 2019 that courts in the Middle District have generally awarded hourly rates between $250 and $375 in FLSA cases); *Cabreja v. SC Maint., Inc.*, 8:19-cv-296-T-33CPT, 2019 WL 2931469 (M.D. Fla. 2019) (approving in an FLSA action in which the defendant defaulted an hourly rate of $400.00 for an employment lawyer with more than twenty years of experience but noting that the rate was "admittedly at the high end of rates charged for similar cases in this community.").

---

[8] Although Mr. Cabassa points to a case from this District in which a court approved his hourly rate of $675 (*McNamara v. Brenntag Mid-South, Inc.*, no. 8:21-cv-618 (M.D. Fla. Feb. 17, 2022)), that case involved a class action, rather than a single-plaintiff case and, therefore, is distinguishable.

26

I scheduled a hearing to afford Mr. Cabassa the opportunity to defend the reasonableness of his requested rate. Doc. 30. Plaintiff's counsel did not appear, to defend Mr. Cabassa's rate or otherwise.[9] Doc. 31.

Nonetheless, given Mr. Cabassa's significant experience in handling FLSA claims, I recommend that he be awarded a $400 hourly rate, which is on the "high end of rates charged for similar cases in this community." *Cabreja*, 2019 WL 2931469, at *7; *see also Hernandez v. Drop Runner, LLC*, No. 8:23-cv-1302-TPB-JSS, 2023 WL 8720197, at *2-3 (M.D. Fla. Nov. 21, 2023) (finding $400 per hour a reasonable rate for an attorney with 20 years' experience).

Turning to Mr. Cabassa's reported hours, I find most, but not all, time expended by Mr. Cabassa on this case to be reasonable. I scheduled a hearing to afford Mr. Cabassa the opportunity to defend the reasonableness of certain time entries. Doc. 30. Mr. Cabassa did not appear. Doc. 31.

I therefore recommend that the Court deny the requested fees associated with a small number of Mr. Cabassa's time entries. Specifically, Mr. Cabassa

---

[9] The evening following the scheduled hearing, Plaintiff's counsel filed a "Notice" with the Court, stating that he "failed to appear for the hearing due to a scheduling error" and asking the Court to schedule a new hearing. Doc. 32. Given that the Court has given Plaintiff multiple opportunities to amend or supplement deficient filings (*see e.g.,* Doc. 17, 28), and given that the hearing was scheduled expressly to allow Plaintiff to do so once more (*see* Doc. 30), I do not find the proffered reason for missing the hearing sufficient to warrant scheduling another hearing for his benefit. Plaintiff had the burden to support the reasonableness of his fee request in his original motion.

seeks to be compensated three times for 0.2 hours spent reviewing brief text orders. For example, a time entry dated 1/3/24 suggests that he spent more than 6 minutes reading a docket entry that stated only, "Case Reassigned to US Magistrate Judge Natalie Hirt Adams. New case number: 8:23-cv-00993-CEH-NHA. Magistrate Judge Unassigned Magistrate no longer assigned to the case." Doc. 27-3 at p. 3 (referencing Doc. 18). I recommend that the Court strike these entries (0.2 hours on 5/5/23, 0.2 hours on 5/8/23, 0.2 hours on 1/3/24). Doc. 27-3 at pp. 2–3.

Additionally, I recommend that the Court strike the one-hour entry on 5/3/23 for preparing the original Complaint, given that the Court found the original Complaint was not viable, and given that Mr. Cabassa then spent two additional hours drafting the Amended Complaint on which the case now travels. Doc. 27-3 at p. 2; Doc. 17.

Were the Court to strike the recommended entries, it would reduce the 17.9 hours claimed to 16.3 hours reasonably incurred.

Multiplying the reasonable number of hours incurred (16.3) and the reasonable hourly rate ($400), the lodestar for attorney's fees here is $6,520. I see no grounds to depart from this lodestar amount given the circumstances of this case.

iv.    Costs

Plaintiff seeks to recover $402 for the Court filing fee and $86 for two process server fees (each $43). Doc. 27 at p. 15; *see also* Doc. 1 (receipt for $402 filing fee); Doc. 27-4 (receipts for process server).

In FLSA cases, courts may award as costs those expenses permitted by 28 U.S.C. § 1920. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The filing fee and costs of service are permitted under § 1920. 28 U.S.C. §§ 1920(1), 1921(b)[10]. Accordingly, I recommend Plaintiff be awarded $488 in costs.

v.    Post-Judgment Interest

Finally, Plaintiff asks the Court to award post-judgment interest. The federal post-judgment interest statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Accordingly, I recommend Plaintiff be awarded post-judgment interest.

---

[10] Under § 1921(b), these service fees may not exceed the amount set by the Attorney General by regulation as fees for service by the U.S. Marshal. 28 C.F.R. § 0.114(a)(3). The current fee for personal service of process is $65 per hour for each item served, plus travel costs and other out-of-pocket expenses. *Id.*

29

## V.    Conclusion

For the reasons stated, I respectfully RECOMMEND that Plaintiff's Second Motion for Default Judgment be granted in part and denied in part. Specifically, I recommend that:

(1)    Plaintiff's motion for default judgment be granted as to Plaintiff's FLSA claim (Count Two) and Plaintiff be awarded $4,877.71 in unpaid overtime premiums, $4,877.71 in liquidated damages, $6,520.00 in attorneys' fees, and $488.00 in costs, plus post-judgment interest;

(2)    Plaintiff's motion for default judgment on the worker's compensation retaliation claim (Count One) be denied without prejudice; and

(3)    Plaintiff's motion otherwise be denied.

SUBMITTED for consideration on December 5, 2024.

_____
NATALIE HIRT ADAMS
United States Magistrate Judge

NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's

failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.